†HANNAH REED V. HENRY L. BROWN, EXECUTOR OF THE LAST WILL AND TESTAMENT OF ROBERT BROWN, DECEASED.

POWER OF PROBATE COURT UPON HEARING EXCEPTIONS TO EXECUTOR'S ACCOUNT.

The probate court has power, upon the hearing of exceptions to the account of an executor filed in such court, to hear and determine upon evidence, the question as to whether or not such executor has been guilty of collusively and fraudulently selling and conveying real estate of the testator at much less than its fair value, under authority con-

†This judgment was affirmed by the supreme court; see opinion 56 O. S., 264.

ferred by the will to sell the same for the payment of debts; and if the court finds the executor guilty of the alleged fraudulent conduct, to charge him in his account with the fair value of the lands so sold.

ERROR to the Court of Common Pleas.

SCRIBNER, J. (orally).

This is a proceeding in error whereby it is sought to reverse the judgment of the Court of Common Pleas rendered in the case, taken into that court by way of appeal from the judgment of the probate court.

In the year 1890, and some time prior to the first of October of that year, one Robert Brown, then a resident of Huron county, departed this life possessed of certain personal estate and seized in fee of a farm containing about 101 acres of land, situate in said county. He left certain persons named in this proceeding his heirs at law, and his last will and testament, which was duly admitted to probate in the probate court of Huron county, in the fall of 1890. By the terms of this will the defendant in error in this proceeding, Henry L. Brown, was appointed executor. This instrument, among its provisions, contains the following:

*Item Third.* "I do hereby nominate and appoint my son, Henry L. Brown, executor of this my last will and testament, hereby authorizing and empowering him to compromise, adjust, release and discharge in such manner as he may deem proper, the debts and claims due me. I do also authorize and empower him, if it shall become necessary in order to pay my debts, to sell by private sale, or in such manner, upon such terms of credit or otherwise, as he may think proper, all of my real estate, personal property, and deeds to purchasers, to execute, acknowledge and deliver in fee simple; and after payment of my debts, funeral expenses and costs of administration, the residue to be equally divided among the legatees hereinbefore mentioned, according to the provisions of this will."

The will having been duly and regularly admitted to probate, and the executor having accepted the trust and given bond as required by law, and entered upon the discharge of the duties imposed upon him by law, and required of him by the will, proceeded with the performance of these duties until the time came for a settlement of his accounts filed in the probate court of Huron county. To that account exceptions were entered by the present plaintiff in error, who was one of the heirs at law and devisees of the testator. These exceptions were heard by the probate court on the 25th of May, 1891.

The principal matter in contention, as presented by these exceptions, was the claim made on behalf of this plaintiff in error, that the executor had, by fraudulent collusion with certain of the heirs, conveyed to them, assuming to act under the authority conferred by the clause of the will which I have just read, the land described therein, being the farm of about 101 acres, for the consideration of $1,200.

In filing his account with the probate court, the executor had charged himself with the sum of $1,200 as the proceeds of the sale of the real estate which he had made. The exceptions to the account were heard before the probate court, and it was particularly urged as against the executor, that he had acted collusively and fraudulently with the brothers and sisters in conveying to them the farm for what was claimed to be the nominal price of $1,200. It was insisted on that hearing that the real estate so conveyed was of the value of from four thousand to four thousand five hundred dollars, and that the executor should be charged, in addition to the sum of $1,200, with which he had charged himself as the price or value of this land, with such further sum as would bring the debit side of his account up, as far as the land is concerned, to the sum of from $4,000 to $4,500.

The probate court sustained the exceptions taken to the account and charged the executor with an additional sum for the land; or, the probate court, finding in effect, that the averments made against the executor were true and

sustained by the evidence, adjudged that he was bound to account not only for the money he had received, but for the waste and loss caused by his malfeasance in disposing of the real estate in the manner in which he did. The executor took his appeal under the statute, to the court of common pleas, and in that court, when the cause came on for hearing, all testimony offered by the present plaintiff in error tending to support the charge of fraud made against the executor, was excluded by the court, the court being of the opinion that the probate court had no jurisdiction in passing upon the account of the executor, to entertain a question or claim of that kind; and that whatever remedy the plaintiff had, if any, was upon the official bond of the executor for maladministration of the affairs of the estate.

The proof offered by the plaintiff in error, if received, would have tended to show that the farm was worth from $4,000 to $4,500; that the executor had been offered $4,000 for it and had refused the offer; and in various forms, the plaintiff, by different witnesses, offered to make proof of facts upon which she based her claim, that the executor had been guilty of the acts charged against him in the exceptions to his account filed in the probate court.

But all this testimony was excluded by the court upon the ground that, in the opinion of the court, it was incompetent for the court to receive or consider it; that the probate court had no power or jurisdiction, upon the hearing of the exceptions to the account of the executor, to consider or pass upon or adjudge as to the validity of the claim made by the plaintiff in error. There were sundry other exceptions taken, disputing the account of the executor as to various small amounts for which he claimed credit, and these objections in the main, were also overruled by the court of common pleas upon the ground that the executor was entitled to be credited in his account with the estate for the sums for which he claimed credit.

The ruling of the court of common pleas having been against the plaintiff here, a bill of exceptions was taken embodying the testimony that had been given or offered, and the action of the court thereon, and this proceeding in error is brought to reverse the judgment and order of the court of common pleas, holding that the liability, if any there be, attaching as against the executor, cannot be considered either in the probate court upon exceptions to the account of the executor, or in the court of common pleas upon appeal from the judgment of the probate court. As a matter of course, the question as to whether or not the court of common pleas erred in this regard depends upon the further paramount and important question lying behind it as to whether or not the probate court had jurisdiction, in passing upon the account of the executor, to hear and determine the question as to whether or not he had been guilty of maladministration or malfeasance in office, and had fraudulently disposed of real estate of the decedent.

The will conferring the power of sale, it will be observed, confers the power merely; it does not transfer to the executor the title to the land and then give him power to sell. The authority is conferred upon the executor in these words:

"I do also authorize and empower him (the executor), if it shall become necessary in order to pay my debts, to sell by private sale, or in such manner upon such terms of credit or otherwise as he may think proper, all of my real estate, personal property, and deeds to purchasers, to execute, acknowledge and deliver in fee simple," etc.

The deed made by the executor, a copy of which appears as a part of the bill of exceptions, recites:

"Know all men by these presents, that I, Henry L. Brown, as executor under the last will and testament of Robert Brown, deceased, late of Hartland, in the county of Huron and state of Ohio, which will was duly proved and admitted to probate by the probate court for said county, on the third day of October, A. D. 1890, do, by virtue, and in execution of the power to me given in and by said will, and of every other power and authority, me hereto enabling, the sale

of the premises hereinafter described being necessary in order to pay the debts of the said Robert Brown, deceased, and in consideration of the sum of $1,200," etc.

The power of sale, it will be observed, is given in the event that it becomes necessary to make a sale for the payment of debts. The deed made in pursuance of the power, recites that it has become necessary to make the sale in order to provide for the payment of debts.

The bill of exceptions contains this further statement:

"It was further agreed on the hearing of said proceeding, by said executor and exceptor, that the grantees in the deed hereinafter mentioned, are the brothers and sisters of said executor, and that the said Elias P. Brown has been, since the appointment of said executor, his general agent in the management of the affairs of said trust, said executor being a non-resident of Ohio, and that said Elias P. Brown is one of the sureties on the bond of said executor."

The question then for us to determine is, whether or not the probate court possesses jurisdiction under the constitution and laws of this state, in passing upon the account of an executor, to consider and determine whether or not the executor has, in disposing of real estate of the testator under power conferred by the will, acted fraudulently, with the intent of defrauding certain of the heirs at law, or devisees under the will—whether or not the probate court has power to consider that question and hear testimony bearing upon it; and if it should find that the executor has been guilty of such fraud, then whether or not that court has power to charge him, not only with the sum that he has realized in making the sale, but also with such further sum as he might have realized or should have realized had he managed his trust faithfully and honestly, with due regard to the rights and interests of all concerned.

The point of contention is just here: Upon the part of the defendant in error, it is insisted that while the liability of the executor exists, upon the facts stated, to account to the parties who have been wronged by such dishonest conduct on his part, the remedy to enforce such liability is upon the bond which the executor has given for the faithful discharge of his duties. Whether or not the wrong which (according to the claim of the plaintiff) he has committed, may be remedied and relief had against him in the probate court on the settlement of the accounts of the executor, is the question in controversy. While on the one hand it is conceded that the probate court, in cases of this kind, is vested with very great power, yet it is insisted that power is not conferred upon that court to pass upon a claim such as is here made in a proceeding to settle the accounts of the executor, even if the proofs establish the fact that the wrongful act has been committed as charged.

The provisions of the constitution regarding the powers conferred upon probate courts are as follows: Section VIII, article 4, of the Constitution:

"The probate court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of accounts of executors, administrators and guardians, and such jurisdiction in *habeas corpus*, the issuing of marriage licenses, and for the sale of lands by executors, administrators and guardians, and such other jurisdiction in any county or counties as may be provided by law."

There are also certain provisions of the statute which it is proper to notice touching the jurisdiction conferred upon the probate court. Among these is section 6006, in regard to the bond an administrator is required to give before entering upon the execution of his trust. And there is another, section 5996, relating to the bond of an executor, which reads as follows:

"Every executor before entering upon the execution of his trust shall give bond, with two or more sufficient sureties, in such sum as the court shall order, payable to the state, with condition as follows:

" *First*—To make and return to the court, on oath, within three months, a true inventory of all the moneys, goods, chattels, rights and credits of the testator which are by law to be administered, and which shall have come to his possession

or knowledge; and also, if required by the court, an inventory of the real estate of the deceased.

" *Second*—To administer according to law, and to the will of the testator, all his goods, chattels, rights and credits, and the proceeds of all his real estate, that may be sold for the payment of his debts or legacies, which shall at any time come to the possession of the executor, or to the possession of any other person for him; and,

" *Third*—To render, upon oath, a just and true account of his administration, within eighteen months, and at any other times when required by the court or the law; and failing so to do for thirty days after he shall have been notified of the expiration of the time by the probate judge, he shall receive no allowance for services, unless the court shall enter upon its journal that such delay was necessary and reasonable."

The other clause of this section relates to the power of the probate court to dispense with the giving of a bond where the testator has not intended that any bond shall be required.

Section 6023 provides that:

"Every executor or administrator shall, within three months after his appointment, make and return upon oath, into court, a true inventory of all the goods, chattels, moneys, rights and credits of the deceased, which are by law to be administered, and which shall have come to his possession or knowledge, except only that an executor who is a residuary legatee, may give bond to pay all the debts and legacies of the deceased as hereinbefore provided, and he shall thereupon be excused from returning such inventory," etc.

And section 6025 is as follows:

"If the court, at the time of granting letters testamentary, or letters of administration, shall think fit, it may order the executor or administrator to also include in the inventory an appraisement of all the real estate of the deceased."

Section 6028 reads:

"The estate and effects comprised in the inventory shall, unless an appraisement thereof has been dispensed with by an order of court, be appraised by three suitable disinterested persons, who shall be appointed by the court, and sworn to a faithful discharge of their trust; and if any part of such estate or effects be in any other county, any disinterested justice of such county may appoint the appraisers of the estate and effects therein."

Section 6179 should also be considered in passing upon this case; it reads:

"Every executor or administrator shall be chargeable with the amount of the sale bill as hereinbefore provided, and also with all goods, chattels, rights and credits of the deceased which shall come to his hands, and which are by law to be administered, although they should not be included in the inventory or sale bill; also with all the proceeds of the real estate, sold for the payment of debts or legacies, and with all the interest, profit and income that shall in any way come to his hands from the personal estate of the deceased."

Section 6180 should also be considered; it reads:

"No profits shall be made by executors or administrators by the increase, nor shall they sustain any loss by the decrease or destruction, without their fault, of any part of the estate."

Section 6209 relates to the liability of an administrator for unreasonably delaying to convert the assets of the estate, either by collecting the debts, or by selling the real estate, if it should be necessary.

Section 6215 provides as to the manner in which an action on the bond shall be brought, and from this, as well as by decisions of the supreme court, it appears that the probate court has no jurisdiction of an action on a bond of the administrator or executor.

If the probate court have jurisdiction in a proceeding for the settlement of the accounts of an executor, to pass upon the question as to whether or not the executor has been guilty of devastavit, as charged in this proceeding, and has

fraudulently disposed of the property of the estate to the prejudice of those interested therein, it would seem to follow that, in the event of the settlement of the accounts of the executor, without the question being passed upon, as to whether or not he should be charged with the additional sum alleged to have been lost to the estate by his maladministration, the parties interested in the estate might be estopped from afterwards asserting the claim against him for the bad faith and improper conduct charged against him in such a proceeding. For example, an account is filed, as it was filed here; the executor charges himself with a sum of money paid by the grantee to whom he has conveyed the land which is the subject of the controversy. The proceeding usual in such cases, under the statute, is had in the probate court. The probate court passes upon the account and adjudges that the executor is chargeable with the sum entered in his account as the proceeds of the sale of the land which he has made. The probate court finds, in entering up its conclusion and judgment in the case, that the executor is chargeable with so much money as shown in his account, so much for the proceeds of the personal estate, and so much for the proceeds of the real estate which he has sold; and finds also that he is to be credited with so much paid out in the course of administration, and that there is a balance in his hands of so much money, and he orders that sum to be distributed according to law. This is the only final order he can make.

If, after that, an action should be brought upon the executor's bond by the heirs or devisees who have been injured, charging the executor with maladministration in the affairs of the estate, there would be danger, at least, that the claimants might be successfully met with the objection that the executor had filed his account, including the debits against himself for the moneys realized upon the sale of the real property; that the account had been passed upon by the probate court and approved by that court, and the balance found due in his hands charged up against him, and an order made that he distribute that sum according to law. In such case we are brought back to the main question arising in the case, namely: Has the probate court jurisdiction to determine, in passing upon the account, as to whether or not the executor has been guilty of devastavit, and should be charged with an additional sum of money by reason of it? It would be very difficult, in our opinion, to escape the conviction that the judgment of the probate court approving the account, so long as it remained undisturbed, concluded the parties in interest. If the probate court had not jurisdiction to consider or determine whether or not the executor had been guilty of fraud as alleged, it would follow, as a matter of course, that no estoppel could arise.

The record shows that the only authority this executor had to sell the real estate depended upon the fact that it was required for the payment of debts. He had no power or authority to sell except for the payment of debts. His deed recites, as I have already shown, that it was necessary to sell the real estate in order to provide means for the payment of debts. If there had been no will or no power conferred by will to make the sale for that purpose, the executor or administrator, as the case might be, would have been required to take proceedings in the probate court, under the statute, in order to effect a sale of the real estate, and from that sale to realize funds with which to pay debts and the costs and expenses of administration.

The question arises in the mind at once as to whether or not a sale authorized by the will of the testator differs in any respect in its consequences, as to the executor who acts upon it, from a sale made by authority of the probate court for the same purpose. In the one case the authority is conferred by the will of the testator; in the other it is conferred by order of the probate court, acting under a provision of the statute.

It seems to us, after much consideration of the question that when an executor is required, in the performance of his duties, to sell real estate in order to pay debts and the expenses of administration, the land itself in his hands and its proceeds after a sale made in execution of the powers and duties devolved

upon him, constitute a portion of the assets of the estate. We think this conclusion may rest for its authority not only upon a fair construction of the language of the different sections of the statute before referred to, but also upon the doctrine of the case of *Sheldon* v. *Newton*, 3 Ohio St. R., 495, and also the case in 17 Ohio St. R, 548.

If the lands become assets of the estate, when the situation is such that it is necessary to convert them into money, why should not the executor be chargeable with them as with any other assets, or with their proceeds or their value, precisely as with the personal property which is committed to his care? He is required by law to sell the real estate when necessary to pay debts. He is directed and authorized by this will to perform that duty without resort to the process of the probate court in order to accomplish it. It is true that under a decision of the Supreme Court, such portion of the proceeds of real estate, when sold to pay debts, as is not required for the payment of debts, is to be distributed precisely as the real estate is by law or the will distributed; that is to say, the fact that the executor, in order to raise the necessary funds to enable him to perform and discharge his trust, has proceeded to sell real estate and the sale produces more than is required to pay the debts, does not interfere with the due descent of the fund which represents the lands; that is, of the money or proceeds of the sale which are not required for the payment of debts. This does not interfere with the rule that should be applied in such cases as to whether or not this money, a portion of which, or the whole of which is required for the payment of debts, should be treated as assets in the hands of the executor. The extent to which the fund should be treated as assets usually depends upon the question as to what portion of it is required for the payment of the debts of the decedent. The whole of the proceeds may be required or a part only.

But the proceeds, notwithstanding the rule prevailing in such cases, not required for the payment of debts, in the hands of the executor, are to be treated, so far as his liability is concerned, precisely as the portion of the fund which may be required for the payment of debts. Lands required to be sold for the payment of debts, and sold by the executor in the performance of the duties imposed upon him by the will, for the payment of debts, are, in fixing the measure of his liability, to be regarded as assets of the estate, and we think as such, they are within the terms of his liability as an executor holding or chargeable with assets.

In our view, it is not the difference between what the executor sold the land for, and what he should or might have sold it for, that constitutes the measure of liability, or strictly the subject of the liability; but it is the land itself which came to his hands under the will and which he sold by virtue of the terms of the will and in pursuance of the requirements of the statute for the payment of debts. He is not simply to be charged with what he might have realized from the sale of the land; if it be shown that he has been guilty of fraud, collusion and malfeasance, as is charged against him, and which this record and the evidence offered in this regard tend to show he was guilty of, it is not that he realized only $1,200 when he should have realized $4,000 or $4,500, or the mere difference between what he received and the price offered; but he should be charged with the fair value of the land as assets in his hands for which value he and the sureties on his bond, so far as the bond imposes liability, are required to account.

I desire to call attention to the condition of the bond as required by the statute (section 5996), which I read a few moments ago, and to ask counsel to consider how far the terms of this section specifying the condition that the bond shall contain, affect the sureties in the bond for the misfeasance charged in this case.

The bond or the condition is to be as follows:

*First*—"To make and return to the court, on oath, within three months, a true inventory of all the moneys, goods, chattels, rights and credits of the testator

which are by law to be administered, and which shall have come to his possession or knowledge; and also, if required by the court, an inventory of the real estate of the deceased.

*Second*—"To administer according to law, and to the will of the testator, all his goods, chattels, rights and credits, and the proceeds of all his real estate, that may be sold for the payment of his debts or legacies, which shall at any time come to the possession of the executor, or to the possession of any other person for him; and,

*Third*—"To render, upon oath, a just and true account of his administration, within eighteen months, and at any other times when required by the court or the law; and failing so to do for thirty days after he shall have been notified of the expiration of the time by the probate judge, he shall receive no allowance for services, unless the court shall enter upon its journal that such delay was necessary and reasonable."

It is a serious question, if counsel for defendants in error are correct in their views, as to whether or not malfeasance of the character now in question, is within the letter or strict terms of these requirements of the statute.

If the land, under the circumstances shown in the record, can not be regarded as assets of the estate, how can liability arise on the bond of the executor framed under the provisions of the statute, for wasting or dealing dishonestly with it? And if the land be assets when sold by the executor under the power conferred by the will, for the payment of debts and expenses of administration, how can it be consistently said that the probate court has not jurisdiction to deal with such assets and the conduct of the executor, in settling and adjusting his accounts and ascertaining the amount with which the executor should be charged?

There are some other matters of minor importance that arise upon the record of this case; certain exceptions to items credited to the executor in his account. One item is for insurance on the farm buildings, and other items for expenses incurred in traveling from the state of the executor's residence to Ohio in order to look after the business of the estate, and things of that kind.

Our time has been so much occupied in the consideration of the main points of this case, as well as questions arising in other cases that were argued, that we have had little opportunity or time to consider properly these questions and are not in a position to pass definitely upon them. We have our impressions, however, and they are these: First, as to the item of insurance; that the executor is not entitled to credit for. Until the property was sold, or until the executor took steps to sell it, he had nothing to do with it, and his duty did not require him to insure the property; we do not see that he had any right to do it. So far as the item of expenditure is concerned, in coming to Ohio from another state to look after the interests of the estate, we are inclined to think that that constitutes a proper charge; he was the executor. The testator had a right to choose whomsoever he wanted and a person was chosen from another state, and in order to accept the trust, he was compelled to come to Ohio to perform the duties of his office and it occurs to us that these items are a proper charge against the estate; but we prefer that no finding should appear in the record. We offer this merely as a suggestion, but we do not wish to be bound by it.

For the error of the court in rejecting the testimony offered by the plaintiff in error, the judgment will be reversed and the case remanded to the court of common pleas for further proceedings.

*G. Ray Craig* and *S. A. Wildman*, for Plaintiff in Error.

*C. P. & L. W. Wickham* and *Andrews Bros.*, for Defendants in Error.